UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GEORGIANN BARE,** | ) | **CASE NO. 5:11-cv-120** |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **JUDGE SARA LIOI** |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| **FEDERAL EXPRESS CORP., et al.,** | ) | **ORDER** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is a motion for summary judgment filed by defendant Federal Express Corp. ("defendant" or "Federal Express"). (Doc. No. 37.) Plaintiff Georgiann Bare ("plaintiff" or "Bare") has filed a brief in opposition (Doc. No. 44), to which defendant has replied. (Doc. No. 45.) Also before the Court is plaintiff's motion to amend the complaint and defendant's opposition thereto. (Doc. Nos. 60, 66.)[1] For the reasons that follow, plaintiff's motion to amend is **DENIED** and defendant's motion for summary judgment is **GRANTED**.

## I.    BACKGROUND

Bare began working as a courier for Federal Express[2] in August 1991 at Federal Express's Akron, Ohio station. During orientation, Bare received a copy of the Federal Express Employee Handbook and became familiar with Federal Express's policies prohibiting discrimination, harassment, and retaliation, as well as Federal Express's complaint procedures[3]

---

[1] Plaintiff's motion to amend was originally filed on August 1, 2012. (Doc. No. No. 59.) Plaintiff subsequently amended her motion on August 2, 2012.
[2] Federal Express is a Delaware corporation with its principal place of business in Memphis, Tennessee and is a direct, wholly owned subsidiary of FedEx Corporation ("FedEx Corp.").
[3] These policies and procedures include Federal Express's Open Door Policy and/or its "Internal EEO Complaint Procedure," which encourages employees to report discrimination, harassment, and/or retaliation to management or the Human Resources Department. Additionally, Federal Express offers an internal grievance procedure known as

and its Medical Leave of Absence Policy, which provides employees time off from work if they are medically unable to return to work. Couriers are responsible for timely package pickup and delivery and are required to lift 75 pounds unassisted on a regular and consistent basis.

On August 2, 2007, Bare injured her back and neck at work. Greg Barkdull ("Barkdull") then became Bare's Human Capital Management Program ("HCMP") manager.[4] Initially, Bare was diagnosed with a cervical and lumbar injury and given a 5-pound lifting restriction. In September 2007, Bare was treated by an orthopedic surgeon and given a 20-pound[5] lifting restriction, which prevented Bare from performing her job as a courier. Bare was able to return to light duty work temporarily through Federal Express's Temporary Return to Work Policy.[6] Once Bare exhausted her temporary placement under the policy, she took a Workers' Compensation/Medical Leave of Absence.

In or about December 2008, Bare reached maximum medical improvement through her workers' compensation program and was released to return to work with a 20-pound lifting restriction. On January 26, 2009, Barkdull informed Bare that her medical leave of absence would be exhausted on April 17, 2009.[7] Barkdull further explained that Bare had to

_____

the Guaranteed Fair Treatment Procedure ("GFTP"), which permits employees to dispute disciplinary actions or related employment decisions. In addition to the inclusion of these policies in the employee handbook, Federal Express makes these policies available to employees in its Federal Express People Manual, which its employees may access in the workplace.

[4] The HCMP assists injured or disabled employees with their leaves of absence and returns to work. After an employee is injured or disabled, the employee is assigned and reports directly to an HCMP manager, who explains Federal Express's Medical Leave of Absence Policy, provides the employee the necessary paperwork, and then works with the employee to return him or her to work.

[5] Although Bare testified during her deposition that her physician imposed a 20-pound lifting restriction, she now offers a medical report in support of her opposition brief that sets her lifting restriction at 22 pounds. For purposes of this motion and the issues before the Court, however, this distinction is immaterial.

[6] This policy provides placement for injured or disabled employees who are temporarily unable to perform the full range of their regular job duties and who have been released by their physicians to return to work in a limited capacity. Under the policy, temporary placement cannot exceed 90 days.

[7] The Federal Express's Medical Leave of Absence Policy provides a maximum duration of 365 days of leave time to its fulltime employees. According to Federal Express, Bare's medical leave of absence should have expired in

secure a job prior to the end of her medical leave, that she would have placement preference for any open jobs, and that certain jobs could be restructured depending on the location, staffing, and other operational considerations. Barkdull also encouraged her to ask about possible accommodations.

Thereafter, Barkdull sent Bare several mailings listing the only job openings at FedEx Express, each requiring a 75-pound lifting capacity. Bare advised Barkdull of her medical restrictions and capabilities, but never asked whether any of the available jobs could be restructured or changed to fit within her work restrictions. Further, Bare did not express any interest in these open positions, nor did she apply for the posted positions.

Instead, Bare requested a transfer to FedEx Custom Critical ("Custom Critical").[8] Bare testified that Barkdull told her "it was against company policy" to help her get a job at Custom Critical, another wholly-owned subsidiary of FedEx Corporation. (Doc. No. 41 at 695.) Barkdull testified that he could not place Bare in a position at Custom Critical because it is a separate company operating with its own policies and procedures, and he is only able to place employees within Federal Express. (Doc. No. 40 at 485-86.) Further, Barkdull had been advised not to interact with other FedEx operating companies because they have their own set policies and procedures. (*Id*. at 487.)

---

2008, but at that time, the state of Ohio required employers to retain employees on workers compensation medical leave of absences. *See Coolidge v. Riverdale Local Sch. Dist.*, 100 Ohio St. 3d 141, 150 (2003). As of 2009, that requirement was no longer in effect. *See Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St. 3d 351, 352 (2007). Accordingly, in January 2009, Barkdull advised Bare that her medical leave would expire in 90 days. Later, Federal Express further extended Bare's medical leave by five additional weeks until April 2009 due to staffing realignment.

[8] Custom Critical, an Ohio corporation within its principle place of business in Uniontown, Ohio, is also a direct, wholly owned subsidiary of FedEx Corp. It is uncontested that Federal Express, FedEx Custom Critical, as well as their parent company FedEx Corp., are separate, and distinct corporate entities, with different managers, officers and directors. None of these entities exercises day-to-day control over the employment decisions of the others, nor do any of these entities have authority to hire employees on behalf of each other or to transfer employees between each other.

On June 2, 2009, having exhausted her available medical leave time and not having advised FedEx Express that she was able to return to work without restrictions, Barkdull terminated Bare's employment pursuant to the company's Medical Leave of Absence Policy.

On December 15, 2010, Bare filed a complaint against defendants FedEx Express Corp. and Federal Express in the Court of Common Pleas, Summit County, Ohio, alleging disability discrimination in violation of Ohio Rev. Code § 4112.02 et seq. (Doc. No. 1-1.) On January 19, 2011, defendants removed the action to this Court based on diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. (Doc. No. 1.)[9] The complaint alleges that plaintiff requested the reasonable accommodation of being allowed to apply for a regular full time job within her physical abilities at a "sister Federal Express Corporation subsidiary, the Custom Critical plant in Akron, Ohio[.]" (Doc. No. 1-1 at 7.) Further, the complaint alleges that plaintiff was unable to apply for jobs in the other Federal Express locations, as each job required lifting exceeding her restriction, and that Barkdull refused to allow plaintiff to post for jobs at the Custom Critical location despite there being "numerous jobs" open that she was qualified to perform without accommodation. (*Id.*) The complaint asserts that allowing plaintiff to apply for jobs at the Custom Critical subsidiary would not have been an undue hardship on defendant and that the "denial of posting was done in whole or relevant part due to Plaintiff's known disability." (*Id.*)

On March 16, 2011, the Court held a case management conference pursuant to notice and in accordance with Fed. R. Civ. P. 16. Following this conference, the Court issued a case management plan and trial order ("CMPTO") adopting April 4, 2011, the date proposed by the parties, as the deadline for amending pleadings. (*See* Joint Report of Parties' Planning

---

[9] On November 2, 2011, the parties entered a joint stipulation of dismissal with prejudice of defendant FedEx Express Corp. as an improperly named party defendant. (*See* Doc. No. 25.)

Meeting [Doc. No. 64] at 64; CMPTO [Doc. No. 12] at 67.) Additionally, the Court adopted the parties' proposed fact-discovery cut-off date of November 11, 2011, as well as their proposed summary judgment-briefing schedule. (*Id*.) Subsequent to a motion by plaintiff, the Court amended its scheduling order, extending fact discovery until December 19, 2011 and resetting summary judgment deadlines such that briefing would be completed by February 27, 2012. (*See* Plaintiff's Motion to Continue All Deadlines [Doc. No. 26]; Amended CMPTO [Doc. No. 27].) The deadline for amending the pleadings remained unchanged. (*Id*.) This case is currently set for trial on September 4, 2012. (Doc. No. 55.)

On January 23, 2012, defendant filed the instant motion for summary judgment. As of February 27, 2012, the parties had completed briefing on the motion for summary judgment in compliance with the Court's amended CMPTO. On August 1, 2012, plaintiff moved to amend her complaint.

## II.     PLAINTIFF'S MOTION TO AMEND

Fed. R. Civ. P. 15(a) provides that when a party is required to seek leave of court in order to file an amended pleading, "lease shall be freely given when justice so requires." The Supreme Court has explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

However, when, as here, the deadline for amending pleadings established by the Court's scheduling order has passed, the Sixth Circuit has made clear that, "a plaintiff must first show good cause under Rule 16(b) for failure earlier to seek leave to amend" and the Court "must evaluate prejudice to the nonmoving party 'before a court will consider whether amendment is proper under Rule 15(a).'"[10] *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (quoting *Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003)). "Consequently the Court is permitted to examine the standard factors governing amendments under Rule 15(a) only if it is satisfied that the date for the filing of a motion for leave to amend is properly extended under the good cause provisions of Rule 16(b)." *Craig-Wood v. Time Warner N.Y. Cable LLC*, No. 2:10-cv-906, 2011 WL 4829687, at *2 (Oct. 6, 2011), *reconsideration denied*, 2012 WL 346686 (S.D. Ohio Feb. 2, 2012).

The Sixth Circuit has held that,

> [t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . Another relevant consideration is possible prejudice to the party opposing the modification.

*Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal citations and quotation marks omitted).

Here, plaintiff's motion to amend first seeks to drop FedEx Express Corporation, a previously dismissed party, from the caption of the complaint. In its response brief, defendant submits that such an amendment is unnecessary because FedEx Express has already been

---

[10] Rule 16(b)(4) provides that a court's scheduling order "may be modified only for good cause and with the judge's consent."

dismissed with prejudice by Court order. The Court agrees with defendant, and finds that the proposed amendment to "remove" a previously dismissed party is wholly unnecessary.

Plaintiff next seeks leave to amend her complaint to "clarify" her allegation that defendant failed to investigate possible reasonable accommodations at the FedEx Express in Akron, Ohio. The proposed amendment alleges that, "Defendant Federal Express Corporation, through their Supervisor, Greg Barkdull, further failed to investigate any possible reasonable accommodations at the FedEx Express in Akron, Ohio." (See Proposed First Amended Complaint [Doc. No. 60-1] at 1040.) Plaintiff contends that the amendment will not prejudice defendant, nor will it "create harassment or undue delay[,]" noting that "this failure to investigate issue has been fully discussed, litigated, and discovered by the parties," has been addressed in the pending summary judgment briefs, and has been "expressly listed" in the parties' joint status reports filed with the Court.[11] (Doc. No. 60 at 1037.) Defendant opposes the amendment on the grounds that plaintiff's motion is untimely, lacks good cause, is unfairly prejudicial and is futile.

Defendant has filed her motion to amend nearly 16 months since the deadline for amendments has passed, more than eight months since the close of fact discovery, more than five months since the conclusion of summary judgment briefing, and one month before the scheduled jury trial. Plaintiff admits in her motion that she has been aware of the factual predicate for her requested amendment since at least the close of discovery, yet she offers no explanation for her delay in seeking an amendment, and pronounces that the defendant will not be prejudiced by the amendment.

---

[11] The parties have filed 10 joint status reports with the Court. (Doc. Nos. 14, 16, 19, 21, 23, 33, 43, 46, 51, 56.) Of those status reports filed, the three most recent reports, filed on April 2, May 14, and June 28, 2012, indicate that plaintiff alleges that defendant failed to investigate a reasonable accommodation at FedEx Express in Akron, Ohio. (Doc. Nos. 46, 51, 56.) It is significant that plaintiff's "addition" or her "clarification" appeared in the April report, and yet, she delayed until the eve of trial to move to amend.

As defendant points out, this will be the third time that plaintiff has changed her theory of the case. In her original complaint, plaintiff alleged that, due to her lifting limitations, Federal Express should have placed her in a position at Custom Critical. But, in her response to the summary judgment motion, plaintiff conceded that Federal Express and Custom Critical are two separate and distinct corporations, neither of which controlled the other, and she modified her argument claiming that Federal Express should have assisted her in some way in applying to Custom Critical. Now, one month before trial, plaintiff wishes to shift her theory of the case yet again by "clarifying" that her complaint is that Federal Express "failed to investigate possible reasonable accommodation at the FedEx Express in Akron, Ohio." Plaintiff has failed to provide any explanation for her undue delay in seeking to amend her complaint. Moreover, for the reasons cited by the defendant, the Court finds that the defendant would be prejudiced if it were now required to defend the case based upon plaintiff's ever-changing theory. Finally, the Court finds that even if it allowed plaintiff to amend her complaint as she requests, she could not defeat the motion summary judgment because (as will be more fully discussed in Part III of the opinion) she conceded that she could not perform and did not apply for any open positions at the Akron Federal Express facility, nor did she ask Barkdull if any open job could be restructured to accommodate her needs. (Bare Dep., Doc. No. 41 at 681-83, 686, 688-90, 693-94.) Instead, she requested a transfer to Custom Critical, something that Barkdull could not do. (*Id*. at 694.)

The Sixth Circuit has held numerous times, in similar situations, that a district court's denial of a motion to amend the complaint does not constitute an abuse of discretion. *See Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (upholding district court's denial of leave to amend after close of discovery and filing deadline

for dispositive motions because plaintiff could not explain its delay in bringing claims it knew of since lawsuit's inception and addition new claims would prejudice defendants at such late stage of litigation); *Jimkoski v. State Farm Mut. Auto. Ins. Co.*, 247 F. App'x 654, 660-61 (6th Cir. 2007) (no abuse of discretion when district court denied motion to amend filed eight days before start of trial where defendant would have been prejudiced if court permitted amendment); *Miller v. Admin. Office of Courts,* 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions on the issue of immunity was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court."); *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (holding that district court did not abuse its discretion where it determined that plaintiffs failed to show good cause to amend complaint after dispositive motion deadline); *Duggins v. Steak 'N Shake, Inc.,* 195 F.3d 828, 834 (6th Cir. 1999) ("At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree.").

The Court concludes that plaintiff has not established good cause required for modification of the case scheduled under Rule 16(b), that amendment at this late stage of the litigation would unduly prejudice defendant, and that even if the Court permitted the amendment, such amendment would be futile. Accordingly, plaintiff's motion to amend is **DENIED**.

## III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina College v. Russell*, 499 U.S. 225 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determining whether a factual issue is "genuine" requires considering the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on

which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### B.  Analysis

Federal Express has moved for summary judgment asserting Bare has not proven a *prima facie* case of discriminatory discharge or failure to accommodate. The complaint alleges Bare's termination and Federal Express's failure to accommodate Bare's lifting restriction constitute unlawful discrimination in violation of the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02 et seq., which provides in relevant part:

> It shall be an unlawful discriminatory practice: (A) for any employer, because of the . . . disability . . . of any person to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code § 4112.02(A).

### 1.  Discriminatory Discharge Claim

The Ohio Supreme Court recognized in *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St. 2d 192, 197 (1981), that

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) sets forth the formula courts should rely upon in evaluating claims of discrimination under Ohio Rev. Code § 4112.02. The burden shifting established in *McDonnell Douglas,* and later clarified by *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981), is divided into three stages.

At the first stage, plaintiff must prove a *prima facie* case of discrimination. *Burdine,* 450 U.S. at 252-53. It is well settled that to establish a *prima facie* case of disability discrimination under Ohio Rev. Code § 4112.02, plaintiff must prove that: (1) she has a disability; (2) adverse action was taken by Federal Express, at least in part, because of her disability; and (3) even though she had a disability, she could have safely and substantially performed the essential functions of the job in question with or without reasonable accommodation. *Hood v. Diamond Prods.,* 74 Ohio St. 3d 298, 302 (1996) (citing *Hazlett v. Martin Chevrolet, Inc.,* 25 Ohio St. 3d 279, 281 (1986)).

If plaintiff establishes a *prima facie* case, the burden then shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* (quoting *McDonnell Douglas,* 411 U.S. at 804). *See Plumbers,* 66 Ohio St. 2d at 197. If defendant meets this burden, the final stage requires plaintiff to prove that the proffered reason was merely a pretext for unlawful discrimination. *Burdine,* 450 U.S. at 253 (citing *McDonnell Douglas,* 411 U.S. at 804). Pretext is established by a direct showing that "a discriminatory reason more likely motivated the employer or [by an] indirect[] . . . showing that the employer's explanation is unworthy of credence." *Burdine,* 450 U.S. at 256. *See also, Kline v. TVA,* 128 F.3d 337, 342-43 (6th Cir. 1997).

Federal Express maintains it is entitled to summary judgment on Bare's claims because she is unable to establish a *prima facie* case of discriminatory discharge. Further, Federal Express argues it had nondiscriminatory reasons for terminating Bare and that Bare cannot demonstrate pretext or discriminatory animus or intent. These arguments are well taken.

Under Ohio law, "disability" is defined as:

> . . . a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

Ohio Rev. Code § 4112.01(A)(13). The parties dispute whether Bare's impairment *substantially limits* a major life activity.

The term "substantially limits" is not defined in the Ohio statutes or regulations, but it is defined by federal regulations. Under federal regulations, the term "substantially limit[ed]" means "[u]nable to perform a major life activity that the average person in the general population can perform," or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 19 C.F.R. §§ 1630.2(j)(1)(i) and (ii) (2010). The "substantially limits" analysis requires an individualized determination as to what effect the claimed impairment has on the life of the individual. *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, No. 09-6381, 2012 WL 1889389 (6th Cir. May 25, 2012). The recent amendments to the ADA discourage strict interpretation of the Act's terms and instruct the courts to construe the term

"disability" broadly. *Verhoff v. Time Warner Cable*, 299 F. App'x 488, 492 n. 2 (6th Cir. 2008); 42 U.S.C. § 12102(4). Even defining the term broadly, however, Bare has failed to present sufficient evidence from which it can reasonably be concluded her impairment substantially limits any of her major life activities.

Here, Bare claims her permanent lifting restriction severely limits her ability to bend and squat and to engage in many household chores, including lifting a turkey at Thanksgiving. Numerous courts have held physician imposed lifting restrictions, at least equal to, or in excess of, the one imposed on Bare, do not, in and of themselves, constitute substantially limiting physical impairments. *See, e.g.*, *McDonald v. City of New* York, 786 F. Supp. 2d 588, 609 (E.D.N.Y. 2011) (holding a 20-pound lifting restriction does not constitute a physical impairment that substantially limits a major life activity); *id.* (collecting cases); *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 364 (3d Cir. 2000) (same with respect to 10-pound lifting restriction)); *Sadinsky v. EBCO Mfg. Co.*, 134 Ohio App.3d 54 (Ohio Ct. App. 1999) (holding an employee's inability to lift more than 30 to 40 pounds did not substantially limit his ability to engage in ordinary daily activities).

Moreover, although Bare indicated she does "not push the limit" imposed by her physician, she admitted that but for her physician imposed lifting restriction, she could continue to perform her job as a courier on her former assigned route. (Doc. No. 41 at 736-38.) Bare's claim that her impairment is substantially limiting is further belied by her admissions that she can occasionally lift more than 20 pounds, performs yard work and housework, does stretching and bending exercises, works out with weights, and rides a stationary bicycle. (*Id.*) Accordingly, the Court concludes plaintiff has not shown she has a legally cognizable disability. *See Overfield*

14

*v. H.B. Magruder Memorial Hosp., Inc.*, No. 3:10CV2038, 2012 WL 243341, at *8 (N.D. Ohio Jan. 25, 2012) (finding no cognizable disability where plaintiff "had to be careful with her arm" but could "fix her hair, dress herself, do laundry, go grocery shopping, rake leaves, cut the grass, and other varied activities").

Even assuming that Bare has presented sufficient evidence of a disability, she has not make out a *prima facie* case of disability discrimination because she has not demonstrated she could safely and substantially perform her job's essential functions with or without a reasonable accommodation. There is no dispute that the courier position has a minimum 75-pound lifting requirement and that the essential functions of the job cannot be performed with a 20-pound lifting restriction. Further, it is undisputed there were no open jobs at Federal Express that could accommodate a 20-pound lifting restriction during the relevant time frame. Indeed, Bare admits she cannot lift 75-pounds and that the 75-pound requirement was an essential function of the courier job and each of the other open positions that Barkdull identified. (Doc. No. 41 at 693-94.) Accordingly, by Bare's own testimony and by her own doctor's orders, she was not qualified to perform her job or any other open position at the time of her termination. *See Miller v. Premier Indus. Corp.*, 136 Ohio App. 3d 662, 671 (Ohio Ct. App. 2000) (former employee did not show he could safely and substantially perform essential functions of former position where job required lifting loads in excess of 10 pounds and employee's doctor had imposed 10-pound lifting restriction).

Bare contends, nonetheless, that she could continue working at Federal Express with an accommodation. For example, she suggests she was capable of performing in a light duty

capacity.[12] Yet, while Bare may have been able to perform such work, the record is clear that she did not in fact request any such accommodations. Instead, Bare only advised Barkdull of her limitations and that she had an interest in returning to work generally, and not that she asked that any open position to be altered or restructured to accommodate her lifting restriction. (Doc. No. 41 at 683-86, 688).[13] Bare cannot rely on an accommodation she did not request. *Manigan v. Sw. Ohio Reg'l Transit Auth.*, 385 F. App'x 472, 478 n.5 (6th Cir. 2010) (employee's failure to request accommodations from employer fatal to employee's failure to accommodate claim) (citing *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 518 (6th Cir. 2002)).

Moreover, even if Bare had asked for a light duty assignment, Federal Express was under no obligation to place Bare permanently in light duty work or to create a position for her when one did not exist. *Hoskins v. Oakland Cnty. Sheriff's Dept*., 227 F.3d 719, 729-31 (6th Cir. 2000) ("It is well established…that an employer is not obligated to create a position not then in existence.") (citing *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir.1998)). Bare has not shown there were any openings at Federal Express in which she could have performed the aforementioned tasks. Nor was Federal Express required to continue to retain Bare on leave until a position she might be qualified for opened up. *Scott v. Univ. of Toledo*, 137 Ohio App. 3d 538, 543 (Ohio Ct. App. 2000) (holding although reassignment to an available related vacant position is a reasonable accommodation, this does not include keeping employee on indefinite leave of

---

[12] Specifically, she testified during her deposition that she was could still handle problem packages, train couriers on the road, do check-rides for managers, prepare international documentation, and perform phone customer service.

[13] Bare has submitted an affidavit in which she claims to have "advised" Barkdull of her capacity to engage in various light duty assignments. (Doc. No. 44-7 at 951.) This assertion is inconsistent, however, with Bare's deposition testimony indicating that she only advised Barkdull of her limitations and that she wished to keep working. (Doc. No. 41 at 682-83.) Moreover that portion of her deposition on which Bare relies shows only that she merely recited a list of positions she "could have handled," and not any that she actually asked Barkdull to place her in. (Id. at 681.) In *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir. 1984), the Sixth Circuit held that a party does not create a genuine issue of material fact by supplying an affidavit which contradicts her previously given deposition testimony.

absence until such a position becomes available); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 09-6381, 2012 WL 1889389 (6th Cir. May 25, 2012) ("While it is true that employers may be required, as a reasonable accommodation, to transfer a disabled employee to a vacant position for which he or she is qualified, employers are under no duty to keep employees on unpaid leave indefinitely until such position opens up.").

Further, while job restructuring may be a reasonable accommodation in appropriate circumstances, such an accommodation only applies to restructuring non-essential duties or marginal functions of a job. Federal Express was under no duty to restructure the essential lifting requirements of the courier position or any other open position. *See Bingaman v. Procter & Gamble Co.*, No. 04-3584, 2005 WL 1579703, at *6 (6th Cir. July 6, 2005) (citing *Bratten v. SSI Servs., Inc.,* 185 F.3d 625, 632-33 (6th Cir.1999); and *Cassidy*, 138 F.3d at 635); *see also, Denczak v. Ford Motor Co.*, 407 F. Supp. 2d 880, 886 (N.D. Ohio 2005) ("[A] reasonable accommodation within the ADA does not require lowering standards or removing essential functions of the job.") (citation omitted).

Finally, even assuming *arguendo* that Bare has made out a *prima facie* case of disability discrimination, her discriminatory discharge claim fails for the additional reason that Federal Express has articulated a legitimate, nondiscriminatory reason for terminating her, which has not been refuted by a showing of unlawful pretext. *Burdine,* 450 U.S. at 253 (citing *McDonnell Douglas,* 411 U.S. at 804). Once an employer articulates a legitimate, nondiscriminatory reason for its action, "the plaintiff must then show that the reason given by the employer is pretextual in order to prevail." *Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 810

17

(6th Cir. 1999) (citations omitted). A plaintiff may show pretext by establishing "by a preponderance of the evidence . . . [that defendant's proffered reasons] (1) . . . had no basis in fact, (2) . . . did not actually motivate [Bare's] discharge, or (3) . . . were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.,* 579 F.3d 614 (6th Cir. 2009) (citations and internal quotation marks omitted).

Here, Federal Express justifies Bare's termination on the basis that she exhausted her available leave time, could not report to work or perform any open jobs at Federal Express with the restrictions imposed by her physician, and did not even express an interest in any open jobs, with or without accommodations during the relevant period. These are each legitimate, nondiscriminatory reasons for termination. *See e.g., Mullet v. Wayne-Dalton Corp.*, 338 F. Supp. 2d 806, 817 (N.D. Ohio 2004) (holding termination of an employee who is unable to return to work and has exhausted available leave under an employer's policy is a legitimate, nondiscriminatory reason for termination); *Hillery v. Fifth Third Bank*, No. 2:08-CV-1045, 2010 WL 1963408, at *8 (S.D. Ohio May 17, 2010) (employee's own failure to apply for posted position provided a legitimate, nondiscriminatory reason for not promoting employee).

In response, Bare has offered no evidence to dispute Federal Express's legitimate, nondiscriminatory reason and makes no arguments regarding pretext. As a result, defendant is entitled to summary judgment on plaintiff's discriminatory discharge claim. *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2010) (summary judgment is appropriate when the

plaintiff fails to produce evidence from which a jury could reasonably conclude that the employer's reasons were pretexutal).[14]

### 2. Failure to Accommodate Claim

Bare also maintains Federal Express failed to reasonably accommodate her alleged disability. Under Ohio law, "[a]n employer must make [a] reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business." *Smith v. Dillard Dep't Stores, Inc.,* 139 Ohio App. 3d 525, 532 (Ohio Ct. App. 2000) (quoting Ohio Admin. Code § 4112-5-08(E)(1)).

In order to establish a *prima facie* failure to accommodate claim, plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) defendant knew or had reason to know about her disability; (4) she requested an accommodation; and (5) defendant failed to provide the necessary accommodation. *Myers v. Cuyahoga Cnty., Ohio*, 182 F. App'x 510, 515 (6th Cir. 2006) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).[15] Under this analysis, as noted above, an employee may not rely on an accommodation that was not requested. *Virts*, 285 F.3d at 518. Generally, a disabled employee's request for an accommodation triggers an employer's duty to participate in good faith in the interactive process to attempt to identify an appropriate

---

[14] Although *Coomer* involved a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), such claims are subject to the same *McDonnell Douglas* burden shifting analysis applicable to the ADA claims in this case.

[15] Although *Myers* involved a failure to accommodate claim under the Americans with Disabilities Act ("ADA"), the Sixth Circuit noted that the same analysis applies to claims of disability discrimination under Ohio law. 182 F. App'x at 515 (citing *Brenneman v. MedCentral Health Sys.,* 366 F.3d 412, 418 (6th Cir. 2004)).

accommodation. *See Clark v. Whirlpool Corp.,* 109 F. App'x 750, 755 (6th Cir. 2004); *Shaver v. Wolske & Blue*, 138 Ohio App. 3d 653, 747 (Ohio Ct. App. 2000).

As outlined above, even assuming Bare is disabled, she  has failed to demonstrate that she was otherwise qualified for a position at Federal Express. Further, there is simply no evidence that Bare ever requested a reasonable accommodation. Nor has she shown that Federal Express failed to make a good faith effort to assist her in identifying a reasonable accommodation.

The record is clear that although Barkdull notified Bare of every open position at Federal Express, Bare never expressed an interest in any of the open positions, much less requested any of the positions be restructured to accommodate her lifting restriction. Barkdull communicated with Bare about her leave of absence requirements and her physical limitations, he informed her of all open positions at Federal Express up until the time of her termination, he explained some positions could be restructured to accommodate her work restrictions, and instructed she should contact him if she had an interest in any of the open positions; but she did not do so.[16] Bare alleges Federal Express acted in bad faith when Barkdull advised her there

---

[16] Bare contends she triggered the interactive process simply by advising Barkdull of her limitations and telling him that she wanted to keep working. A request for accommodation, however, must be "sufficiently direct and specific" to give notice to the employer of the need for an accommodation and the potential reasonable accommodations that would overcome the employee's limitations. *Niles v. Nat'l Vendor Servs., Inc.*, No. 10AP-128, 2010 WL 3783426, at *6 (Ohio Ct. App. Sept. 28, 2010) (holding "a bare communication describing [a] lifting restriction" and requesting a return to work, does not constitute a direct and specific request for an accommodation) (citing *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001); *Hagan Anderson Cnty. v. Fiscal Ct.*, 105 F. Supp. 2d 612, 617 (E.D. Ky. 2000)). "An employer is not required to speculate as to the extent of an . . . employee's need or desire for an accommodation." *Badri v. Huron Hosp.*, 691 F. Supp. 2d 744, 763 (N.D. Ohio 2010) (quoting *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1046-47 (6th Cir. 1998)). Moreover, while "employers have a duty to locate suitable positions for disabled employees, such employees may not recover unless they propose, or apply for, particular alternative positions for which they are qualified." *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 258 (6th Cir. 2000).

Bare relies on two Seventh Circuit cases for the proposition that when an employee advises an employer of restrictions and indicates a desire to keep working, the employee has made a sufficient request for an accommodation. Bare's reliance on these cases, however, is misplaced. Bare states that *Beck v. Univ. of Wisconsin*

were no accommodations to return her to her courier position. Yet, it is undisputed that there were no open jobs for which Bare could perform the essential functions, with or without accommodation during the relevant time period, and that, even if there were Bare never expressed an interest in a specific open position. This is fatal to her failure to accommodate claim. *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 258 (6th Cir. 2000) (holding plaintiff's failure to request a transfer to a new position for which he was otherwise qualified, or alternatively, to ask for specific assistance in identifying jobs for which he could qualify, precluded him from recovering for discrimination under ADA). Further, based on the record, the Court rejects Bare's argument that Federal Express failed to engage in the interactive process in good faith or caused the process to break down. *See Burns*, 222 F.3d at 258 (attributing breakdown in interactive process to plaintiff's failure to propose, or apply for, a transfer to a

---

*Bd. of Regents*, 75 F.3d 1130 (7th Cir. 1996), stands for the proposition that an employer's liability was triggered by its failure to provide reasonable accommodation in response to an employee informing it of her disability. *Beck* held, however, that the "[l]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for [a] breakdown[]" in the interactive process. *Beck*, 75 F.3d at 1135-36. In *Beck*, the court held that the plaintiff was responsible for the breakdown in the process due to her failure to give the employer any indication of what specific accommodations were necessary. Similarly, here, Bare failed to suggest, or even inquire about the availability of, any specific accommodation.

Next, Bare relies on *Miller v. Illinois Dep't of Corr.*, 107 F.3d 483 (7th Cir. 1997), for the proposition that simply asking for continued employment is a sufficient request for an accommodation. The Seventh Circuit concluded in *Miller*, however, that, "[e]ven if an employee who . . . becomes disabled while employed says to the employer, 'I want to keep working for you-*do you have any suggestions*?' the employer has a duty under the [ADA] to ascertain whether he has some job that the employee might be able to fill." *Miller,* 107 F.3d at 486-87 (ultimately affirming judgment for the defendant because the plaintiff only expressed interest in reassignment to a job that did not exist, and did not evince any interest in "jobs the essential duties of which [might have been] within her ability to perform") (emphasis added). Thus, in that case, the plaintiff did more than just suggest that he wanted to continue working; he asked whether the employer had any suggestions in this regard. Here, there is no indication in the record that Bare ever asked Barkdull if he had any suggestions that would enable her to return to work in any open positions, much less that he denied a request for specific assistance in identifying jobs for which she could qualify. Ultimately, as the Sixth Circuit noted in *Burns, supra*, even those Seventh Circuit decisions that require employers to make an affirmative effort to locate jobs for disabled employees still place the onus on a plaintiff to propose an alternate job for which she might otherwise be qualified. *Burns*, at 258 (citing *DePaoli v. Abbott Labs.*, 140 F.3d 668, 675 (7th Cir. 1998) (approving of the employer's affirmative effort to accommodate the plaintiff with a reassignment, but finding insufficient the plaintiff's general request that the employer reassign her to a job that "accommodated her medical restrictions"); *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 680-81 (7th Cir. 1998) (affirming summary judgment with respect to those plaintiffs who failed to show they were qualified for reassignment)).

specific, alternate position for which he was otherwise qualified); *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008) (holding an employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible position for plaintiff) (citing *Kleiber*, 485 F.3d at 871).

Notwithstanding her failure to request an accommodation at Federal Express, Bare contends she subsequently requested a reasonable accommodation when she asked Barkdull to transfer her to an open position at Custom Critical. As discussed above, however, Bare concedes that Federal Express could not have forced Custom Critical to hire plaintiff and that Federal Express and Custom Critical are legally separate entities. Thus, Federal Express was under no legal obligation to place plaintiff at this separate company and, therefore, Bare has not met her burden in establishing a failure to accommodate. Accordingly, defendant is entitled to summary judgment on plaintiff's failure to accommodate claim.

**IV.  CONCLUSION**

For all of the foregoing reasons, plaintiff's motion for leave to amend her complaint is **DENIED**, defendant's motion for summary judgment is **GRANTED,** and this case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: August 15, 2012

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

23